McBRIDE, Judge.
In the darkness of early morning on November 20, 1961, in the Parish of Jefferson, an automotive station wagon owned and operated by John L. Thornton and a large tractor-trailer unit owned by S. D’Antoni, Inc., and driven by its employee, Malcolm R. Hood, came into collision. Both vehicles were travelling on what is known as Airline Highway in the direction of Baton Rouge; the accident happened at about Turnbull Drive, which intersects the highway. The outbound half of Airline Highway in that vicinity consists of three lanes for moving traffic. Thornton claims he was driving in the second lane away from the neutral ground while Hood insists his truck was moving in the extreme righthand lane. Each driver claims the other vehicle negligently veered over and struck his vehicle. At any rate, the tractor-trailer unit after the impact left the right side of the highway and continued onward striking and knocking down a utility pole, crossed through the premises of a gasoline filling station and then entered another business place.
Four suits growing out of said accident are before us for adjudication; these matters were consolidated for trial below and a separate judgment was rendered in each; before us the four appeals were consolidated for argument.
In the suit we presently deal with Louisiana Power & Light Company recovered a judgment of $543.06 against New Hampshire Insurance Company, the insurer of the Thornton car for damages to its utility pole and said insurer has appealed.
John L. Thornton, individually, had been made a defendant but no judgment was rendered against him because he was never cited. Certain third-party demands were dismissed by the trial court and need not be further alluded to as they have passed out of the cases in view of our conclusions.
After a careful study and sifting of the testimony, which is, in some particu *31 lars to say the least, conflicting, inconsistent and irreconcilable, we reach the conclusion that the accident was caused by the negligence of Thornton in attempting to suddenly swerve his vehicle to the extreme righthand lane in which the large tractor-trailer was travelling. This, too, was the opinion of the trial judge who handed down written reasons for judgment, which appear to adequately cover all aspects of the case. We adopt the following portions of his reasons as ours:
“The sole issue presented by this matter is purely one of fact. After carefully considering all of the testimony, the Court is of the opinion the preponderance of evidence clearly confirms that the accident was caused solely through the fault and negligence of John L. Thornton, the operator of the station wagon. It establishes that Mr. Thornton attempted to enter and pre-empt the extreme righthand traffic lane occupied by the tractor and thirty-eight foot (380 long trailer belonging to D’Antoni, without having sufficient time or clearance to safely do so. The Court finds as a matter of fact that the driver of the station wagon, by making a sudden and unexpected right turn into the adjoining traffic lane, did run into and strike the D’Antoni truck.
“These factual conclusions are warranted not only by the testimony of the truck driver and of his fellow employee, who was following him in a similar vehicle, but also by the testimony of Mr. Kenneth Bryant, a distinterested witness, and Trooper Arnold Fontana, who investigated the accident. The Court was impressed by the testimony of the State Trooper and, more particularly, as it concerned his findings of skid marks in the extreme right traffic lane, curving or angling in the direction followed by the truck immediately after the impact. Unquestionably, this physical aspect clearly indicates the effort made by the driver to avoid striking the station wagon, which had veered toward him, and, when considered in light of the fact that the truck came to rest some distance off of the highway, substantiates that he was unable to avoid the collision.
“The testimony of Mr. Thornton, the driver of the station wagon, and his guest passenger, Ruth Grabert, that the truck entered their traffic lane and struck them is not corroborated by the physical location of their vehicle after the accident. Had the fully loaded truck, weighing approximately 33,000 pounds, veered to its left and struck the Thornton station wagon, the impact would have propelled it toward the neutral ground, rather than where it came to rest, in the extreme right hand traffic lane of the highway.
“The-record does not reflect that the truck driver was guilty of any act of omission or commission that would render him guilty of contributory negligence. The converse is true, in that it establishes Mr. Hood was operating the truck in a careful and prudent manner, and, had the driver of the station wagon not acted in so unexpectedly and unreasonable manner, this accident would have never occurred. The truck driver had no opportunity or last clear chance to avoid the collision, and the evidence sustains that he did everything within his power to avoid striking the Thornton vehicle, even to swerving off the highway and risking his own safety and welfare. There was no evidence presented of any mechanical deficiencies in the truck’s equipment or braking system, which would render its owner guilty of negligence. The Court must, therefore, conclude that the accident and resulting damage was caused solely and only through the fault and negligence of John L. Thornton, the operator of the station wagon.
“In connection with the claims [resulting from the truck having swerved) off the highway, the Court is of the opinion that [plaintiff’s] right to recovery is restricted to the liability insur- *32 anee carrier of the Thornton station wagon. It is the well settled jurisprudence of this State that when a motorist is faced with a sudden emergency not of his own creation, but resulting through the negligence of another, he is not held to the same degree of care or the exercise of judgment as would be expected of him in the absence of a crisis. The test to be applied in such an event is whether or not the reaction of the truck driver was one which could be reasonably expected of an ordinary prudent man under similar circumstances.
“Having concluded that the accident was caused solely and only through the fault and negligence of Mr. Thornton, and there being no evidence to warrant that the operator of the truck, in swerving from the highway, did not react as a reasonable and ordinary person under the circumstances of sudden peril and emergency, the rights of these plaintiffs to recovery is restricted to the liability of insurance carrier of the negligent party. (Words in brackets ours.)
Appellant’s counsel contends strenuously for a reversal of the judgment. In order to reverse, it would be necessary that we accept Thornton’s version of the accident and discard the testimony of Hood and his corroborating witnesses. We see nothing in Thornton’s testimony or in the physical facts that would countervail the opposing evidence.
Our brother below correctly expounded the law with reference to sudden emergencies in absolving the driver of the tractor-trailer unit from negligence. The Supreme Court in Smith v. Marquette Casualty Company, 247 La. 1054, 176 So.2d 133, said:
“The doctrine that, ‘A motorist confronted by a sudden emergency not caused by him is not held to the same accuracy of judgment or degree of care as in ordinary circumstances. He is not necessarily negligent because he makes a mistake of judgment or fails to adopt the best or wisest course for averting injury, and is not liable for injury if he exercises reasonable care or prudence, considering the circumstances’, 60 C.J.S. Motor Vehicles § 257, p. 624 * *
See also Jones v. Continental Casualty Co. of Chicago, Ill., 246 La. 921, 169 So. 2d 50; Snodgrass v. Centanni, 229 La. 915, 87 So.2d 127; Dane v. Canal Insurance Company, 240 La. 1038, 126 So.2d 355; Stanford v. Bateman Frozen Foods Company, La.App., 149 So.2d 753; Wilson v. Kelly, La.App., 138 So.2d 837; Romans v. New Amsterdam Casualty Co., La.App., 137 So.2d 82; Nixon v. Cloverland Dairy Products Co., La.App., 49 So.2d 352; Shockley v. Norvell-Wilder Supply Co., La. App., 49 So.2d 51; Mayer v. Slaughter, La.App., 40 So.2d 47.
Under the jurisprudence Thornton’s insurer, New Hampshire Insurance Company, is liable for the damages caused by the tractor-trailer unit because of Thornton’s negligence in having created the emergency. Such negligence was the proximate cause of said damages. Fouche v. St. Paul Fire & Marine Insurance Co., La.App., 153 So.2d 180; Genovese v. Abernathy, La.App., 135 So.2d 802; Walter v. New Amsterdam Casualty Company, La. App., 130 So.2d 476; Carolina v. Mack, La. App., 55 So.2d 4.
The damages claimed by the respective plaintiffs in the four suits were agreed to and stipulated by all counsel. It developed that the limit of liability of New Hampshire Insurance Company under its policy is $5,000, and the judge correctly prorated said policy liability amongst the claimants. The amounts of the judgment awarded each plaintiff in the four cases is its pro-rata of the $5,000.
The judgment appealed from is affirmed.
Affirmed.